UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

FIDEL A. CRESPO TACURI,

*Petitioner*,

– against –

KENNETH GENALO, *New York Field Office Director, Immigration and Customs Enforcement and Removal Operations (ICE/ERO)*, KRISTI NOEM, *Secretary of the Department of Homeland Security (DHS)*, PAMELA BONDI, *United States Attorney General*, RAUL MALDONADO, JR., *Warden, Metropolitan Detention Center, Brooklyn (MDC Brooklyn)*

*Respondents.*

**MEMORANDUM & ORDER**
25-cv-06896 (NCM)

---

**NATASHA C. MERLE**, United States District Judge:

On December 15, 2025, petitioner Fidel A. Crespo Tacuri, filed a Petition for Writ of Habeas Corpus challenging the lawfulness of his detention by Immigration and Customs Enforcement ("ICE") and seeking, *inter alia*, his immediate release from custody. *See* Pet. for Writ of Habeas Corpus ("Pet.") 16–17, ECF No. 1.[1] Petitioner alleges that on August 29, 2025, ICE officers, stopped his vehicle while searching for someone else and unlawfully arrested and detained him. Pet. ¶ 18. Petitioner's writ argues that his detention by respondents violates 8 U.S.C. § 1226(a), certain federal bond regulations, and rights guaranteed by the Fourth and Fifth Amendments.

---

[1] Throughout this Order, page numbers for docket filings refer to the page numbers assigned in ECF filing headers.

Respondents are Kenneth Genalo, the New York City Field Office Director for ICE; Kristi Noem, the Secretary of the U.S. Department of Homeland Security ("DHS"); Pamela Bondi, Attorney General of the United States; and, Raul Maldonado, Jr., Warden of MDC Brooklyn ("respondents" or "the government"). Respondents argue that petitioner's detention is lawful under 8 U.S.C. § 1225(b)(2). Mem. of Law in Resp. to Order to Show Cause ("Resp.") 1, 18–30, ECF No. 18.

On December 24, 2025, after the parties' briefing, the Court held oral argument on the petition and **GRANTED** the petition in a ruling from the bench. This opinion sets forth the Court's reasoning.

## BACKGROUND

Petitioner Fidel A. Crespo Tacuri is a 49-year-old citizen of Ecuador who has lived in the United States for approximately 26 years.[2] *See* Decl. of Robert E. Martinez ("Martinez Decl.") ¶ 4, ECF No. 1-1. Petitioner represents that he entered the United States in 1999 without inspection. *See* Pet. ¶¶ 13, 44; *see also* So Decl. ¶ 4. He is married and has an 18-year-old U.S. citizen daughter. Martinez Decl. ¶ 5. In 2022, petitioner started a construction business with his brother in Westchester County. Martinez Decl. ¶ 6. Prior to that, petitioner was a self-employed construction worker. Martinez Decl. ¶ 6. In 2023, he and his wife purchased a home in Mahopac, New York. *See* Martinez Decl. ¶ 5. Prior to his detention on August 29, 2025, petitioner never had contact with immigration

---

[2] The Court's factual recitation relies on facts asserted in the Petition; and a declaration submitted by respondents. *See* Pet.; Decl. of Mincheol So ("So Decl."), ECF No. 19. The facts are undisputed unless otherwise noted. *See O.F.B.*, 2025 WL 3277677, *1 n.2.

enforcement. Martinez Decl. ¶ 9; So Decl. ¶ 4. Petitioner states, and respondents do not refute, that he has had no contact with criminal law enforcement.[3] Martinez Decl. ¶ 9.

On August 29, 2025, petitioner was stopped and detained by respondents. Pet. ¶ 18. Petitioner was driving in Ossining, New York, when officers employed by ICE and other agencies (hereinafter "ICE officers"), followed petitioner and initiated a vehicle stop after determining petitioner matched the description of another individual. Martinez Decl., Ex. 1 at 2 ("DHS Form I-213"), Pet., ECF No. 1-2. Petitioner provided his New York State driver's license to ICE officers, who ran his identification through DHS databases. So Decl. ¶ 5. Petitioner was then arrested after it was determined he was in the United States unlawfully. So Decl. ¶¶ 5–6; Pet. ¶ 18. ICE officers took petitioner to the ICE Sub Office in Newburgh, New York, where he was personally served a notice to appear ("NTA") designating petitioner as removable and commencing removal proceedings. So Decl. ¶ 7; Martinez Decl., Ex. 2 at 2 ("Crespo Tacuri NTA"), Pet., ECF No. 1-3. Later that day, petitioner was transported to the Orange County Correctional Facility in Goshen, New York, and on September 2, 2025, petitioner was booked at the MDC in Brooklyn where he was detained until December 24, 2025. Martinez Decl. ¶ 8; *see* Letter Certifying Release from Custody ("Letter Certifying Release"), Dec. 26, 2025, ECF No. 22. Respondents were legal custodians of petitioner. Pet. ¶¶ 14–17.

On September 4, 2025, petitioner filed his first Bond Redetermination Request with the Immigration Court. Pet. ¶ 19. On September 8, 2025, petitioner appeared for his first Master Calendar Hearing, where he sought cancellation of removal under Section

---

[3]     In their briefs or during oral argument, respondents did not dispute that petitioner does not have a criminal history. *See generally* Resp.; Oral Argument Tr. Dated Dec. 24, 2025, *Crespo Tacuri v. Genalo*, No. 25-cv-06896 ("Dec. 24 Tr."), ECF No. 23.

240A(b)(1) of the INA, 8 U.S.C. § 1229b(b)(1), and a second master calendar hearing was scheduled for September 17, 2025. Pet. ¶ 21.

On September 10, 2025, the Immigration Judge denied petitioner's bond request on the grounds that petitioner was "not eligible for bond under [8 U.S.C. § 1225(b)(2)(A)]" based on *Matter of Yajura Hurtado*. Pet. ¶ 22; *see* Martinez Decl. Ex. 3 at 1 ("First Bond Order") (citing *Matter of Yajura Hurtado*, 29 I&N Dec. 216 (BIA 2025)), Pet., ECF No. 1-4. In *Matter of Yajure Hurtado*, the Board of Immigration Appeals ("BIA") held that all noncitizens who enter the United States without inspection or admission are applicants for admission as defined under Section 1225(b)(2)(A) and must be detained for the duration of their removal proceedings. *Matter of Yajure Hurtado*, 29 I&N Dec. at 220. Given this decision, the Immigration Court declined to hear petitioner's argument on the misapplication of Section 1225(b)(2)(A). Pet. ¶ 22. At the second Master Calendar hearing on September 17, 2025, petitioner filed an application for cancellation of removal pursuant to Section 1229b(b)(1). Pet. ¶ 24.

On November 26, 2025, petitioner filed a second Bond Redetermination Request with the Immigration Court on the grounds that the first request was improperly denied because his detention is governed by 8 U.S.C. § 1226(a) , which provides discretionary authority to detain noncitizens who are already in the country pending removal proceedings and in light of *Bautista v. Santacruz, Jr.*, No. 25-cv-01873, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025) (certifying class). Pet. ¶ 28.

On December 2, 2025, the Immigration Court held petitioner's individual merits hearing on his claim for relief under Section 1229b(b)(1)[4], and determined petitioner did not qualify for relief under Section 1229b(b)(1), and accordingly, ordered his removal to Ecuador. Pet. ¶ 29; So Decl. ¶ 12. By the hearing, the Immigration Judge had not reviewed petitioner's second Bond Redetermination Request. Pet. ¶ 29. On the evening of December 2, 2025, the Immigration Judge issued an order denying petitioner's second Bond Redetermination Request without a hearing and on the grounds that the court in *Bautista* did not issue a class-wide injunction or a final judgment on the matter, and thus *Bautista* does not have preclusive effect on other cases, like that of petitioner. Pet. ¶ 30; *see* Martinez Decl. Ex. 4 at 1 ("Second Bond Order"), Pet., ECF No. 1-5. The Immigration Court held that because *Matter of Yajure Hurtado* is the prevailing authority, petitioner's request for redetermination based on *Bautista* is denied. *See* Second Bond Order at 1.

On December 15, 2025, petitioner filed a petition for a writ of habeas corpus in the Eastern District of New York pursuant to 28 U.S.C. § 2241, seeking, *inter alia*, immediate release from detention. Pet. 17. The same day, the Court issued an order to preserve its jurisdiction enjoining respondents from moving petitioner to a location outside the Eastern District of New York, the Southern District of New York, or the District of New Jersey. Scheduling Order 2, ECF No. 13. The Court also directed respondents to show cause as to why the relief sought in the petition should not be granted. Scheduling Order 3. The

---

[4] Petitioner's individual merits hearing on his Section 1229b relief request was originally scheduled for October 15, 2025. Petitioner's individual merits hearing was rescheduled for November 20, 2025; at that date, the hearing commenced but terminated early due to a court emergency. Pet. ¶¶ 25–26. The individual merits hearing was again rescheduled for December 2, 2025. Pet. ¶¶ 25–26.

Court heard argument from the parties after respondents filed a response, *see* Resp., and petitioner filed a reply, Reply, ECF No. 20.

## LEGAL STANDARD

Section 2241 authorizes federal district courts "to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)). Under Section 2241, "[f]ederal courts have jurisdiction to hear habeas corpus claims by noncitizens challenging the constitutionality of their detention." *Rodriguez-Acurio v. Almodovar*, --- F. Supp. 3d ---, No. 25-cv-06065, 2025 WL 3314420, at *8 (E.D.N.Y. Nov. 28, 2025) (citing *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020)).

## DISCUSSION

Petitioner's case raises three issues. First, whether petitioner—who has resided in the United States since 1999—was detained pursuant to Section 1225(b)(2)(A), which mandates detention of certain noncitizens "seeking admission" to the U.S., or pursuant to Section 1226(a), which "provides for discretionary authority to detain other noncitizens who are already in the country." *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 483 (S.D.N.Y. 2025) (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 288–89 (2018)). Second, if the Court finds that petitioner was detained under Section 1226(a), whether his initial detention violated Constitutional protections afforded to him by the Due Process Clause

of the Fifth Amendment. Finally, if the Court finds that petitioner's detention violates the Due Process Clause, what remedy is due.[5]

The core legal issue in this case is one considered by hundreds of federal courts over recent months: whether a noncitizen at liberty, residing in the United States for years, and unexpectedly arrested and detained by ICE on the basis of a novel interpretation of the INA, must be detained until the conclusion of their removal proceedings.[6] The judges that have considered this issue within the Eastern District of New York in the last four months have unanimously rejected the government's interpretation. *See, e.g.*, *Iza v. Larocco*, No. 25-cv-06915, 2025 WL 3712274, at *5–6 (E.D.N.Y. Dec. 22, 2025) (Choudhury, J.); *Y- C-v. Genalo*, No. 25-cv-06558, 2025 WL 3653496, at *3–5 (E.D.N.Y. Dec. 17, 2025) (Merle, J.); *Ye v. Maldonado*, No. 25-cv-06417, 2025 WL 3521298, at *3–6 (E.D.N.Y. Dec. 8, 2025) (Donnelly, J.); *Rodriguez-Acurio*, 2025 WL 3314420, at *12–21 (Choudhury, J.); *O.F.B. v. Maldonado*, --- F. Supp. 3d ---, No. 25-cv-06336, 2025 WL 3277677, at *3–5 (E.D.N.Y. Nov. 25, 2025) (Gonzales, J.); *Sarmiento Guerrero v. Noem*, No. 25-cv-05881, 2025 WL 3214787, at *3–6 (E.D.N.Y. Nov. 18, 2025) (Komitee, J.); *Hyppolite v. Noem*, No. 25-cv-

---

[5] Because petitioner has brought his claims through the vehicle of a petition for a writ of habeas corpus under 28 U.S.C. § 2241, and because the Court has found it appropriate to grant the writ under the legal standard governing Section 2241 petitions, the Court declines to reach petitioner's arguments or respondents' counterarguments regarding petitioner's substantive due process rights and claim under the Fourth Amendment. Pet. ¶¶ 58–65, 74–79; Resp. 30–32.

[6] As previously described, "the central issue in this case — the administration's new position that all noncitizens who came into the United States illegally, but since have been living in the United States, must be detained until their removal proceedings are completed — has been challenged in at least 362 cases in federal district courts. The challengers have prevailed, either on a preliminary or final basis, in 350 of those cases decided by over 160 different judges sitting in about fifty different courts spread across the United States." *Barco Mercado v. Francis*, --- F. Supp. 3d ---, No. 25-cv-06582, 2025 WL 3295903, at *4 & n.22 (S.D.N.Y. Nov. 26, 2025) (collecting cases) (emphasis omitted).

04304, 2025 WL 2829511, at *7–12 (E.D.N.Y. Oct. 6, 2025) (Morrison, J.); *Artiga v. Genalo*, No. 25-cv-05208, 2025 WL 2829434, at *4–8 (E.D.N.Y. Oct. 5, 2025) (Merchant, J.); *J.U. v. Maldonado*, --- F. Supp. 3d ---, No. 25-cv-04836, 2025 WL 2772765, at *4–9 (E.D.N.Y. Sept. 29, 2025) (Merchant, J.). More broadly, of the over two dozen district courts throughout the Second Circuit to consider the issue, all but two have sided with the view of the overwhelming majority of courts nationwide. *See Ye*, 2025 WL 3521298, at *2 n.7 (noting that only two decisions within the Second Circuit have agreed with the government's interpretation of the INA); *Barco Mercado*, 2025 WL 3295903, at *13 (listing seventeen pre-November 26, 2025 cases within the Second Circuit that ruled against the government). *But see Candido v. Bondi*, No. 25-cv-00867, 2025 WL 3484932, at *1–4 (W.D.N.Y. Dec. 4, 2025) (upholding government's interpretation); *Chen v. Almodovar*, No. 25-cv-08350, 2025 WL 3484855, at *4 (S.D.N.Y. Dec. 4, 2025) (same).

## I.     Statutory Basis for Petitioner's Detention

The threshold question presented by the petition is whether petitioner is detained pursuant to the government's authority under Section 1225(b)(2)(A) or Section 1226(a). The government argues that the former applies mandating petitioner's detention, Resp. 25–30, while petitioner argues that his detention is governed by the latter and thus is discretionary, Reply 2–5. "[T]he two provisions are exclusive; a noncitizen can only be subject to [Section] 1225 or [Section] 1226, not both." *J.U.*, 2025 WL 2772765, at *4.

Section 1225(b)(2)(A) states in relevant part that "an alien seeking admission [who] is not clearly and beyond a doubt entitled to be admitted . . . shall be detained for a proceeding under Section 1229a." 8 U.S.C. § 1225(b)(2)(A). Meanwhile, Section 1226 "authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings." *Jennings*, 583 U.S. at 289; 8 U.S.C. § 1226(a), (c).

Detention under Section 1225 is mandatory except that the government may parole the noncitizen into the United States "on a case-by-case basis for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A); *see Ye*, 2025 WL 3521298, at *3. Detention under Section 1225 precludes a bond hearing. *See Jennings*, 583 U.S. at 296–303. By contrast, detention under Section 1226(a) is discretionary, and a noncitizen who is detained may appeal an "initial custody determination" and request a bond hearing before an immigration judge, 8 C.F.R. §§ 1236.1(c)(8), (d)(1), where the noncitizen "may secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community," *Nielsen v. Preap*, 586 U.S. 392, 397–98 (2019). *See also O.F.B.*, 2025 WL 3277677, at *3. As the Supreme Court noted in *Jennings*, Section 1226(a) applies to noncitizens "already in the country." *Jennings*, 583 U.S. at 288–89.

The government argues that "[p]etitioner falls squarely within the ambit of [Section] 1225(b)(2)'s mandatory detention requirement." Resp. 18. Petitioner's case, the government contends, is one warranting straightforward statutory application of Section 1225. Because petitioner entered the country without inspection, petitioner has "not been admitted," 8 U.S.C. § 1225(a), and is thus "an 'applicant for admission' to the United States" pursuant to Section 1225(b)(2)(A), Resp. 18–19. Moreover, respondents argue, "'applicant[s] for admission [are] a subset of those who are 'seeking admission.'" Resp. 22. The Court finds respondents' argument unavailing.

First, the plain language of the mandatory detention provision of Section 1225(b)(2)(A) requires that the "applicant for admission" be just that: an individual "seeking admission." 8 U.S.C. 1225(b)(2)(A). The INA defines "admission" and "admitted" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(a). By using the term "seeking

9

admission," Section 1225(b)(2)(A) limits its statutory application to noncitizens actively attempting to enter the United States lawfully at its port of entry and does not extend to those already present in the United States. That interpretation is supported by Section 1225's repeated reference to "arriving aliens"[7] and the existence of Section 1226—a separate statute that allows for detention and removal of aliens, i.e. noncitizens, who are already present in the country. Respondents' reading of Section 1225(b)(2)(A) would "render the phrase 'seeking admission' in [Section] 1225(b)(2)(A) mere surplusage." *Lopez-Benitez*, 795 F. Supp. 3d at 487. Petitioner did not arrive in the United States and seek admission when he was detained by the government on August 29, 2025. Instead, he has lived within the United States for almost 30 years. *See* Martinez Decl. ¶ 4. He has built a life with his family, purchased a home in his community and runs a business to provide for his family. *See* Martinez Decl. ¶¶ 5–6. Petitioner is far beyond "seeking" admission into the United States.

Respondents' argument that the many cases in this Circuit that have already dispensed with their arguments were wrongly decided, including the decision by this Court, is insufficient. *See* Resp. 19–24. Respondents also attempt to distinguish this case from the Court's decision in *Y- C- v. Genalo*, No. 25-cv-06558, 2025 WL 3653496 (E.D.N.Y. Dec. 17, 2025) because petitioner in the instant case was not released on his own recognizance, but instead has been residing in the United States without inspection. Resp. 17. This argument is also unavailing. Respondents rely on several cases, only two of

---

[7] "The term arriving alien means an applicant for admission coming or attempting to come into the United States at a port-of-entry, or an alien seeking transit through the United States at a port-of-entry, or an alien interdicted in international or United States waters and brought into the United States by any means, whether or not to a designated port-of-entry, and regardless of the means of transport." 8 C.F.R. § 1001.1(q).

which are in this circuit, to support their argument that a noncitizen present without inspection and residing in the United States for decades is subject to mandatory detention under Section 1225(b). Resp. 19–21. However, as the government admits, none of the cases cited turn on the fact that petitioner was not inspected at the border. *See* Dec. 24 Oral Argument Tr. 7:12–20. The cases instead turned on the question of whether the noncitizen had been admitted, *see* Dec. 24 Tr. 7:19–20, because those courts read "applicant for admission" and "seeking admission" as synonyms, not distinct criteria for Section 1225 to apply. As explained in the Court's opinion in *Y- C-*, the Court respectfully disagrees with that interpretation. *See Y- C-*, 2025 WL 3653496, at *4. Reading "applicant for admission" and "seeking admission" to mean the same thing would be "highly unnatural." *Id.* "If Congress had understood the terms to be synonyms, Congress could have replaced 'an alien seeking admission' with 'the alien' or even 'he or she'—[a] much clearer expression, with (ostensibly) no change in meaning." *Id.* (quoting *Sarmiento Guerrero*, 2025 WL 3214787, at *3).

Respondents' interpretation is also at odds with *Jennings*, and their challenge of this Court's interpretation of *Jennings* is unconvincing. Resp. 21–22. Despite the clear language in *Jennings*, respondents seem to assert that all undocumented individuals in the United States are "applicants for admission" regardless of their proximity to the border, the length of time that they have been present in the United States, or whether they ever had the subjective intent to properly apply for admission. *See* Resp. 21–22. In *Jennings*, the Supreme Court discussed immigration law's two central purposes: "(1) who may enter the country and (2) who may stay here after entering." *Jennings*, 585 U.S. at 286. The government quotes language where the Supreme Court stated that "[a]pplicants for admission fall into one of two categories, those covered by [Section] 1225(b)(1) and

those covered by [Section] 1225(b)(2)." Resp. 21 (quoting *Jennings*, 582 U.S. at 287).

However, the government erroneously seizes on this language in the Supreme Court's

discussion of "who may enter," to argue that the determination of "who may stay" always

triggers the application of Section 1225.

Further, respondents argue that noncitizens are "seeking admission" no matter how

long they have been present in the United States "absent a choice to pursue voluntary

withdrawal or voluntary departure." Resp. 22–23. Essentially, respondents' position is

that a noncitizen seeks admission by default; thus, unless the noncitizen tries to leave the

United States, he is seeking admission. However, while a noncitizen arrested after residing

in the country for almost 30 years might qualify as "an alien present in the United States

who has not been admitted," § 1225(a)(1), the mandatory detention provision upon which

respondents rely, limits its scope to an "applicant for admission" who is "seeking

admission," § 1225(b)(2)(A). To say it differently, "U.S. immigration law authorizes the

Government to detain certain aliens seeking admission into the country under §§

1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens already

in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)."

*Jennings*, 583 U.S. at 289.

Accordingly, this Court finds that Section 1225(b)(2)(A) does not reach someone

who has been residing the United States for nearly 30 years, like petitioner.[8] *See also, e.g.*,

---

[8]    Further, respondents' argument that petitioner is subject to detention under
Section 1225(b)(2)(A) is at odds with the Executive Office of Immigration Review's own
regulations. Following the enactment of Section 1225(b)(2)(A) and Section 1226(a), the
EOIR drafted regulations explaining that individuals who enter without inspection are not
subject to expedited removal. *See* 8 C.F.R. § 235.3(c)(1); *Lopez Benitez*, 795 F. Supp. at
489 ("Pursuant to those regulations, the term arriving alien is treated as roughly
interchangeable with an applicant seeking admission, and is defined as 'an applicant for

*Rocano Buestan v. McShane*, No. 25-cv-08544, 2025 WL 3496361, at \*1–5 (S.D.N.Y. Dec. 5, 2025); *R.P.L. v. Maldonado*, --- F. Supp. 3d ---, No. 25-cv-06886, 2025 WL 3731864, at \*1–3 (E.D.N.Y. Dec. 26, 2025). As someone "already in the country," petitioner may be subject to detention only as a matter of discretion pursuant to Section 1226(a). *Jennings*, 583 U.S. at 289.

## II.    Due Process

Petitioner also argues that his detention violates his procedural due process rights under the Fifth Amendment of the United States Constitution. Pet. ¶¶ 66–73. The Due Process Clause states that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). The Clause "applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* at 693; *see also Rocano Buestan*, 2025 WL 3496361, at \*4 (same); *Velasco Lopez*, 978 F.3d at 850 (same); *Reno v. Flores*, 507 U.S. 292, 306 (1993) ("It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings."). Complying with the Due Process Clause requires that "a person in jeopardy of serious loss be given notice of the case against him and opportunity to meet it." *Mathews v. Eldridge*, 424 U.S. 319, 348 (1976).

### A.  Due Process Clause Applies

admission coming or attempting to come into the United States.'"). Though not binding, agency regulations are "a useful reference point for understanding a statutory scheme, particularly where those regulations were issued roughly contemporaneously with enactment," *Lopez Benitez*, 795 F. Supp. 3d at 489 n.8, because it speaks to the agency's knowledge of what the particular terms of a law mean. *See id.* at 490 (discussing the longstanding practice of applying Section 1226(a) to noncitizens already in the country).

Respondents argue that the Due Process Clause does not apply to petitioner under the Supreme Court's precedents, including the so-called "entry fiction" doctrine. Resp. 17–18. Specifically, the government asserts that noncitizens like petitioner do not automatically enjoy rights granted by the United States Constitution, but rather enjoy only rights granted to them by Congress in a statute. Resp. 18 (citing *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 214–15 (1953)). The Court finds this argument to be without merit.

The facts of this case are similar to many other cases within this Circuit and across the country where courts have concluded that noncitizens present in the United States enjoy the protections of the Due Process Clause, including this Court in *Y- C-*, 2025 W 3653496. Thus, the Court need not belabor the point again. As a "person[] within the United States," petitioner enjoys due process rights. *Zadvydas*, 533 U.S. at 693; *see Barrera Simon v. Olson*, No. 25-cv-14799, 2025 WL 3567469, at *6 (N.D. Ill. Dec. 13, 2025) ("The Fifth Amendment's Due Process Clause applies to all persons within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.") (citing *Zadvydas*, 533 U.S. at 693); *see also Rocano Buestan*, 2025 WL 3496361, at *4 (holding that procedural due process rights applied to petitioner who entered without inspection); *R.P.L.*, 2025 WL 3731864, at *3 (same).

The government's reliance on *DHS v. Thuraissigiam*, 591 U.S. 103, 139–40 (2020) is misplaced. There, the Supreme Court held that a petitioner who was still "at the threshold of initial entry," though technically in the country, could still be treated as "an alien seeking initial entry." *Id*. at 107, 114, 139. There, the noncitizen was detained "within 25 yards of the border" and nearly immediately upon crossing it, and thus treated as if stopped at the border and lacking due process protections. *Id*. at 114. *Thuraissigiam*

presents a scenario distinguishable from the one before the Court, where petitioner was not detained close to the border "shortly after unlawful entry," *id.* at 140, but rather has resided in the United States for decades.

Moreover, the government's attempt to distinguish this case from the Court's previous order in *Y- C-* does not move the needle. Specifically, the government argues that in *Y- C-* the Court was persuaded to grant the petition because petitioner was released on his own recognizance prior to the arrest in question, while by contrast petitioner here had never previously been apprehended by DHS. Resp. 17; *see Y- C-*, 2025 WL 3653496, at *1. However, the Court does not agree that this is a relevant difference. An individual who has been within the United States for nearly 30 years cannot be treated as if stopped at the border simply because he was not previously released on his own recognizance.

Furthermore, the government cites several cases where the entry fiction doctrine applied after several years to a noncitizen who had been paroled into the United States, *see* Resp. 17–18 (first citing *Kaplan v. Tod*, 267 U.S. 228, 230 (1925); and then citing *Poonjani v. Shanahan*, 319 F. Supp. 3d 644, 648 (S.D.N.Y. 2018)), but being paroled into the United States is a distinct circumstance not present here. Noncitizens who are paroled into the country are released on the condition that the government reserves the right to treat them as if they were still stopped at the border. *See Y- C-*, 2025 WL 3653496, at *6 ("Parole into the United States under section 1182(d)(5)(A) permits a non-citizen to physically enter the country, subject to a reservation of rights by the Government that it may continue to treat the non-citizen as if stopped at the border."). Here, however, while petitioner has not been released on his own recognizance, he has also not been paroled into the United States. He thus cannot be considered stopped at the border.

The Court concludes that "petitioner was in this country when ICE agents arrested him without notice and transferred him to the MDC. He is therefore, like any other person in this country, entitled to due process." *Ye*, 2025 WL 3521298, at *6.

###### B. Mathews v. Eldridge *Balancing Test*

Given that the Due Process Clause applies to petitioner's detention, the Court turns next to whether the detention satisfies the three-part balancing test set out in *Mathews v. Eldridge*. *See Ye*, 2025 WL 3521298, at *6 (citing *Velasco Lopez*, 978 F.3d at 851). *Matthews* requires the Court to balance (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

Applying the three-part balancing test set forth in *Mathews*, petitioner's detention without a bond hearing violates procedural due process. First, petitioner has a cognizable private interest in being freed from unlawful detention. *See Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) ("[T]he most elemental of liberty interests—the interest in being free from physical detention by [the] government."); *see also Ye*, 2025 WL 3521298, at *7 (first citing *Artiga*, 2025 WL 2829434, at *8; and then citing *Velasco Lopez*, 978 F.3d at 851). Second, there is a severe risk of erroneous deprivation based on the factual record and the fact that without a hearing, an immigration judge is unable to determine whether the requirements are met for detention. Specifically, since the Immigration Judge found petitioner was being detained under 1225(b)(2)(A), he did not conduct an individualized assessment because under 1225, detention is mandatory. The risk of erroneously depriving petitioner of his

liberty is further emphasized by the fact that respondents have not argued that petitioner is a flight risk or a danger to his community, particularly given that he has been present in the United States for almost three decades with no interactions with law enforcement. And third, the government's interest in continued detention is slight insofar as petitioner was detained without an individualized custody determination that evaluated dangerousness and flight risk or any articulated change in circumstances. As other courts have concluded in factually similar cases, petitioner's detention without a bond hearing amounts to a due process violation. *See, e.g.*, *Ochoa Ochoa v. Noem*, No. 25-cv-10865, 2025 WL 2938779, at *7 (N.D. Ill. Oct. 16, 2025); *Rocano Buestan*, 2025 WL 3496361, at *11.

## III.    Appropriate Remedy

To remedy petitioner's deprivation of due process, the Court held that petitioner is entitled to immediate release from detention. "Habeas is at its core a remedy for unlawful executive detention. The typical remedy for such detention is, of course, release." *Munaf v. Green*, 553 U.S. 674, 693 (2008). Petitioner was summarily detained without "a deliberative process prior to, or contemporaneous with, the initial decision to strip [him] of the freedom that lies at the heart of the Due Process Clause." *Rocano Buestan*, 2025 WL 3496361, at *6 (ordering petitioner's release because the government's "failure to conduct any kind of individualized assessment *before* detaining him [renders] any post-deprivation review by an immigration judge . . . inadequate"). Respondents caused petitioner to be detained in violation of his due process rights. No relief short of petitioner's immediate release would be appropriate or sufficient in this case.

Accordingly, the Court ordered petitioner's immediate release on December 24, 2025.

## CONCLUSION

For the foregoing reasons, the Court **GRANTED** petitioner's writ of habeas corpus under 28 U.S.C. § 2241.

The Court ORDERED petitioner's immediate release from custody on December 24, 2025. Respondents were directed to file a letter on the docket no later than 5:00 p.m. on December 26, 2025, certifying their compliance. *See* Letter Certifying Release.

The Court further ORDERED that petitioner shall not be re-detained pursuant to 8 U.S.C. § 1225(b)(2) absent a change in relevant circumstances.

Should petitioner seek an award of reasonable fees and costs pursuant to the Equal Access to Justice Act, he may do so by filing a letter application on the docket within thirty days of this Order.

The Clerk of Court is respectfully directed to enter judgment consistent with the Order and close the case.

**SO ORDERED.**

  _/s/ Natasha C. Merle_____
NATASHA C. MERLE
United States District Judge

Dated:        January 6, 2026
             Brooklyn, New York